# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NAZANIN MOTTAHEDAN, et al., <br><br>         Plaintiffs, <br><br>    v. <br><br> SCOTT M. OUDKIRK, *in his official capacity*, et al., <br><br>         Defendants. | Civil Action No. 23-3486 (CKK) |

## MEMORANDUM OPINION
(January 11, 2024)

On November 20, 2023, Plaintiffs Nazanin Mottahedan and Mohammadali Guivehchian filed a [1] Complaint for Declaratory and Injunctive Relief (the "Complaint"), seeking a judgment from the Court compelling Defendant Scott Oudkirk, Deputy Chief of Mission at the U.S. Embassy in Ankara, Turkey, and Defendant Antony Blinken, Secretary of the U.S. Department of State ("State Department") (collectively, the "Defendants") to process their immigrant visa applications, pursuant to the Administrative Procedure Act's ("APA's") bar on "unreasonabl[e] delay[]." 5 U.S.C. § 706(1).  The Court then issued an order stating that the matter was before the Court on *sua sponte* review of Plaintiffs' Complaint.  *See* Order, ECF No. 3.  The Court ordered Plaintiffs to show cause, on or before December 18, 2023, why their Complaint should not be dismissed *sua sponte* for failure to state a claim.  *Id.*  Plaintiffs then filed the [5] Response to Order to Show Cause ("Pls.' Resp."), and Defendants filed the [9] Reply to Plaintiffs' Response to Show Cause Order ("Defs.' Reply").  Upon review of Plaintiffs' [1] Complaint, [5] Response, [9] Reply, the relevant legal authority, and the record as a whole, the Court shall **DISMISS** Plaintiffs' [1] Complaint for Declaratory and Injunctive Relief in its entirety.

## I.  BACKGROUND

This case concerns the EB-5 Immigrant Investor Program, which permits foreign investors to enter the United States "for the purpose of engaging in a new commercial enterprise" that meets certain criteria.  8 U.S.C. § 1153(b)(5)(A).  To qualify, the investment must "create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse [or children])." *Id.* § 1153(b)(5)(A)(ii).  The investment must be at or above a certain monetary amount.  *Id.* § 1153(b)(5)(C).  Aside from creating jobs directly by hiring employees, foreign investors can invest in a "regional center" designated by the United States Citizenship and Immigration Services ("USCIS") that is designed to create jobs indirectly through economic growth.  *See* 8 C.F.R. § 204.6(m).

To obtain lawful permanent resident status through the EB-5 program, a foreign investor must file a Form I-526 petition with USCIS.  *Id.* § 204.6(a).  If USCIS determines that the foreign investor meets the EB-5 requirements, it will approve the petition.  *See Nohria v. Renaud*, 2021 WL 950511, at *2 (D.D.C. Mar. 14, 2021) (BAH) (describing I-526 process).  With an approved I-526 petition, the foreign investor becomes an "employment-based immigrant" under the EB-5 statute.  8 U.S.C. § 1154(a)(1)(H).  An approved petition "makes a petitioner eligible for a visa, but does not automatically provide a visa." *Nohria*, 2021 WL 950511, at *2.  The immigrant, if outside the United States, must then apply for and obtain an immigrant visa from the State Department at a consular post abroad.  22 C.F.R. § 42.61(a).  The State Department processes the application at its National Visa Center ("NVC") and ensures that the applicant meets all prerequisites for visa adjudication.  *Nohria*, 2021 WL 950511, at *2.  If the NVC finds that an applicant is "documentarily qualified," it will forward the application to the consulate, which

schedules a visa interview.  *See* 84 Fed. Reg. 35, 756.  After the interview, a consular officer must

either issue the visa, refuse the visa under INA § 212(a) or § 221(g) (or other applicable law), or

discontinue the visa application.  22 C.F.R. § 42.81(a).  Although a visa application may be

"refused" under INA § 221(g), such a refusal may not be a final decision, as the refusal can be

submitted for "administrative processing" and applicants can be given the opportunity to provide

additional information to establish eligibility.  *See, e.g.*, *Ibrahim v. U.S. Dep't of State*, 2020 WL

1703892, at *5 (D.D.C. Apr. 8, 2020) (BAH) (discussing how no final decision is rendered when

applications have been "refused" but are "still undergoing administrative processing").

Plaintiff Mottahedan is a national and citizen of Iran.  Compl. ¶ 9.  Her son, Plaintiff

Guivehchian, was born in Iran and is a citizen of Canada.  *Id.* ¶ 10.  In 2015, Plaintiff Mottahedan

invested $500,000 in Mariposa Wine Co., LLC, a company associated with California Consortium

for Agricultural Export, which is designated as regional center under the EB-5 program.  *Id.* ¶¶ 46–

47; Pls.' Resp. at 5.  In May 2018, USCIS approved Plaintiff Mottahedan's Form I-526 petition,

which the agency received in September 2015.  Compl. ¶ 43.  Subsequently, Plaintiffs "paid the

immigrant visa fees [and] submitted visa applications," with Plaintiff Guivehchian listed as

Plaintiff Mottahedan's derivative beneficiary.  *Id.* ¶ 48; Declaration of Matthew McNeil ("McNeil

Decl."), ECF No. 9-1, ¶ 4.  On November 15, 2018, Plaintiffs' applications became "documentarily

qualified."  McNeil Decl. ¶ 6; Compl. ¶ 50.  Plaintiffs were then scheduled for an interview with

a consular officer at the U.S. Embassy in Ankara, Turkey on January 22, 2019, but the interview

did not occur.[1]  Compl. ¶¶ 51–52.  Subsequently, the U.S. Embassy scheduled an interview for

March 17, 2022, but it was ultimately cancelled because the visas Plaintiffs sought "under the EB-

---

[1] Plaintiffs state that this interview was cancelled on January 17, 2019 by a "cancellation notice."  Compl.
¶ 52.  Defendants claim that Plaintiffs failed to appear for their scheduled interviews on January 22, 2019.
McNeil Decl. ¶ 9.

5 Immigrant Investor Regional Center Program were no longer available due to lapse of the statutory authorization for the program on June 30, 2021." McNeil Decl. ¶ 11. Following the reinstatement of the EB-5 program in 2022, Plaintiffs' interview was scheduled for and completed on October 12, 2022. *Id.* ¶ 12; Compl. ¶¶ 57, 59. That same day, following the interview, the consular officer refused Plaintiffs' applications under INA § 221(g) and placed the applications in administrative processing. Compl. ¶ 60; McNeil Decl. ¶ 13. On October 14, 2022, the U.S. Embassy in Ankara emailed Form DS-5535 (Supplemental Questions for Visa Applicants) to Plaintiff Mottahedan. McNeil Decl. ¶ 14. Plaintiff Mottahedan submitted her responses to Form DS-5535 on or before November 4, 2022. *Id.* ¶ 15. On November 4, 2022, the consular staff at the U.S. Embassy in Ankara "initiated a security advisory opinion request because the consular officer had reason to believe [Plaintiff Mottahedan] may be ineligible for a visa under a security-related ground for visa ineligibility." *Id.* Plaintiffs' visa applications have remained in administrative processing since then. Compl. ¶ 60.

Plaintiffs filed the instant action in November 2023. *See generally id.* Plaintiffs allege that the delay in adjudicating their visa applications have caused "Plaintiffs tangible harm from the increased cost, access to capital, and risk to their capital." *Id.* ¶ 64. Plaintiffs further state that the "financial harm is compounded by the human harms from the delays caused by the cancelled immigrant interviews, lack of transparency from the Embassy on what processing is being undertaken, and anxiety from the uncertainty due to a lack of any communication." *Id.* ¶ 65. Plaintiffs argue that Defendants' delay in adjudication is unreasonable under the Administrative Procedure Act. *Id.* ¶¶ 71–98.

## II.  LEGAL STANDARD

"Ordinarily, the sufficiency of a complaint is tested by a motion brought under Rule 12(b)(6), which tests whether a plaintiff has properly stated a claim" upon which relief can be granted.  *Bauer v. Marmara*, 942 F. Supp. 2d 31, 37 (D.D.C. 2013) (RC).  However, it is well settled in the D.C. Circuit that a court may dismiss a complaint *sua sponte* pursuant to Rule 12(b)(6) where it is "patently obvious" that the plaintiff cannot prevail on the facts alleged in the complaint.  *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 726–27 (D.C. Cir. 1990) (per curiam).

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]he Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

## III.  DISCUSSION

Plaintiffs argue that Defendants' delay in adjudicating their visa applications is unreasonable under the APA.[2]  Compl. ¶¶ 71–98.  Although a court may order an agency "to

---

[2] Plaintiffs note that the doctrine of consular non-reviewability "does not apply in this case because Plaintiffs do not challenge a final decision by a consular officer denying a visa."  Compl. ¶ 19.  Plaintiffs are correct

perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the

---

in that the doctrine would be inapplicable based on the facts before the Court. *See, e.g.*, *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020) (ABJ) (recognizing that a 221(g) notification "is not sufficiently final to warrant the application of the doctrine of consular nonreviewability").

agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

In their response to the Court's show cause order, Plaintiffs appear to question whether the *TRAC* methodology is appropriate at the motion to dismiss stage, stating "[h]ow can the Court possibly evaluate the allegations in the complaint without the record or discovery as to the manner and methodology of Defendants' process, if any[.]" Pls.' Resp. at 11. Admittedly, some district courts have concluded that it is inappropriate to decide unreasonable delay claims at the motion to dismiss stage. *See Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020) (ESH) (concluding that "any determination of whether defendants have unreasonably delayed adjudication . . . is premature at this juncture"). However, the majority of authority demonstrates that it is appropriate to apply the *TRAC* factors at the motion to dismiss stage. *See, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (JDB) (applying *TRAC* factors at the motion to dismiss stage); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020) (CRC) (same); *Sarlak v. Pompeo*, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (BAH) (same); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (RJL) (same); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (TNM) (same). Accordingly, the Court concludes it is appropriate to consider whether Plaintiffs' Complaint meets the Rule 12(b)(6) pleading standards. The Court notes that it is "not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020) (ABJ). The Court now considers the *TRAC* factors in turn.

**A. *TRAC* Factors One and Two**

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The inquiry centers on "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB). Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, *TRAC* factor two is inapplicable. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka,* 246 F. Supp. at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were filed. *See, e.g., Muvvala v. Wolf*, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) (CJN) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). Courts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether that "first-in, first-out" rule is, in fact, being applied.

Plaintiff Mottahedan filed a Form I-526 petition with USCIS in 2015, which was approved by the agency in May 2018. Compl. ¶ 43. That petition was received by the State Department's NVC, which created a case file for Plaintiffs in July 2018, with Plaintiff Guivehchian listed as a derivative beneficiary. McNeil Decl. ¶ 5. In November 2018, Plaintiffs' applications "became documentarily qualified." *Id.* ¶ 6; Compl. ¶ 50. Initially, Plaintiffs had consular interviews

scheduled in January 2019 and March 2022, but these interviews were cancelled.  Compl. ¶¶ 51–52, 54, 56.  The consular interview was conducted on October 12, 2022.  *Id.* ¶ 59.  That same day, the consular officer "refused" Plaintiffs' applications under INA § 221(g), and their applications have remained in administrative processing since then.  *Id.* ¶ 60; McNeil Decl. ¶ 13.  Plaintiffs argue that this delay, which is approximately fourteen (14) months since the October 2022 interview, is unreasonable under the APA.  *See generally* Compl.

Courts in this jurisdiction, however, routinely find that delays of numerous *years* are not unreasonable.  *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (ABJ) (finding that a delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (RJL) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (CRC) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Arab v. Blinken*, 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (BAH) (ruling that a thirty-month delay was not unreasonable); *see also Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

In the Court's show cause order, it directed Plaintiffs to distinguish their case from others involving unreasonable delay challenges that the Court had *sua sponte* dismissed.  *See* Order, ECF No. 3.  In their response, Plaintiffs attempt to distinguish their case from the other cases cited in the Court's order by emphasizing that the delay in this case "began on January 17, 2019, when the United States Embassy in Ankara, Turkey, *sua sponte* cancelled a scheduled visa appointment for

Plaintiffs." Pls.' Resp. at 1.  Therefore, according to Plaintiffs, the delay is not "a [fourteen-month] delay," but is in fact "a near five-year delay." *Id.*

Notably, Plaintiffs have not cited to a single instance in which a court found that the delay in an unreasonable delay challenge begins when a U.S. Embassy "*sua sponte* cancel[s] a scheduled visa appointment." *Id.*; *see also id.* at 8.  Nor is the Court aware of such case law.  Rather, Plaintiffs' applications have been in administrative processing since October 12, 2022, a fact that they recognize in their Complaint, which would mean that the delay in this case has been approximately fourteen months.  Compl. ¶ 60.  Even if, *arguendo*, the Court concludes that the delay began in January 2019—the month Defendants "*sua sponte* cancelled a scheduled visa appointment," Pls.' Resp. at 8—"several of this district's courts have noted that delays between three to five years are often not unreasonable." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (TNM) (quoting *Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 186 (D.D.C. 2021) (TJK)).  And the State Department has, as Plaintiffs concede, taken "some action on the application since [January 2019]," interviewing Plaintiffs in October 2022.  *Id.*  Accordingly, "this waiting period stretches but does not exceed the boundaries of reasonableness under the case law in this district." *Id.*

Plaintiffs also argue that a "strict time-based comparison between lengths of delay, the start [of] which is not always apparent in the absence of a record, is not in accordance with a *TRAC* factor analysis." Pls.' Resp. at 9.  Plaintiffs maintain that "[t]he Court should not treat [their] claim for unreasonable delay as [a] matter of arithmetic where, as here, Plaintiffs have set forth detailed allegations supporting the elements for a claim of unreasonable delay."  *Id.* at 12.  The Court's analysis is not so limited.  District courts in this jurisdiction, including this Court, review the six *TRAC* factors and apply the facts as alleged in the appropriate complaint in determining whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed." *See, e.g.*,

*Sarlak*, 2020 WL 3082108, at *5–7 (applying the *TRAC* factors to the facts of the case at the motion

to dismiss stage); *Didban*, 435 F. Supp. 3d at 175–77 (same); *Palakuru*, 521 F. Supp. 3d at 50–53

(same); *Skalka*, 246 F. Supp. 3d at 153–55 (same); *Ghadami*, 2020 WL 1308376, at *7–9 (same).

The length of the delay is a factor that district courts, including this Court, must consider when

applying the *TRAC* methodology.  *See, e.g.*, *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (providing

the *TRAC* factors and stating that these "factors are not 'ironclad,'" but offer "useful guidance.")

(quoting *TRAC*, 750 F.2d at 80).

     Finally, Plaintiffs maintain that Defendants "have not followed a processing rule in this

case and not one that is based on a first in, first out methodology."  Pls.' Resp. at 1; *id.* at 8.

According to Plaintiffs, "there is nothing to suggest Defendants are processing Plaintiffs'

immigrant visas using a 'first in, first out rule.'"  *Id.* at 10 (citing Compl. ¶¶ 61, 68)).  And, even

assuming Defendants "have adopted a first-in, first-out approach," there "is absolutely nothing that

would show Defendants have followed [such an approach in] processing Plaintiffs cases over their

near five-year odyssey to receive an interview and issuance of visas."  *Id.* at 10.

     As a threshold matter, the Court notes that Plaintiffs fail to take into account certain events

that occurred during the relevant time period in this case: the COVID-19 pandemic and the nine-

month lapse in statutory authorization for the EB-5 program.  With respect to the latter, the D.C.

Circuit recently explained:

> Congress created the Regional Center Program in 1992 as a pilot program, Pub. L.
> No. 102-395, § 610, 106 Stat. at 1874, that it has periodically reauthorized, *see,
> e.g.*, Pub. L. No. 105-119, § 116, 111 Stat. 2440, 2467 (1997); Pub. L. No. 111-83,
> § 548, 123 Stat. 2142, 2177 (2009); Pub. L. No. 114-53, § 131, 129 Stat. 502, 509
> (2015).  A 2020 appropriations bill reauthorized the program, extending the visa
> set-aside period to June 30, 2021.  Consolidated Appropriations Act of 2021, Pub.
> L. No. 116-260, Div. O., § 104, 134 Stat. 1182, 2148 (2020).  But by the time that
> period expired, Congress had yet to reauthorize, causing a lapse from the end of
> June 2021 until March 2022, when Congress passed the EB-5 Reform and Integrity

Act of 2022, extending authorization through September 2027.  Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1075 (2022).

*Da Costa v. Immigr. Inv. Prog. Off.*, 80 F.4th 330, 337–38 (D.C. Cir. 2023).  As a result of this lapse in statutory authorization, the visas Plaintiffs sought under the EB-5 Immigrant Investor Regional Center Program "were no longer available," and their interviews scheduled for March 2022 were consequently cancelled.  McNeil Decl. ¶ 11.  The Court acknowledges that a wait in adjudication can be "maddening," *Da Costa*, 80 F.4th at 342; however, the period of time that Plaintiffs' visa applications have been pending includes "both the nine-month pause in statutory authorization and the serious practical challenges posed by a global pandemic," *id.*  Considering these two events, the Court cannot conclude that the "processing time itself establishes that [the State Department] lacks a rule of reason."  *Id.*

But in any event, Plaintiffs fail to plausibly allege in their Complaint that Defendants are not operating under a first-in, first-out methodology.  Plaintiffs' theory of a lack of rule of reason predominantly rests on their belief that approximately five years should be sufficient time to adjudicate their visa applications.  Pls.' Resp. at 11.  However, Plaintiffs do not account for the possibility, and the likelihood, that earlier-filed applications awaiting adjudication were also affected by the 9-month lapse in statutory authorization and the global pandemic.  *See Alshawy v. U.S. Citizenshp. & Immigr. Servs.*, 2022 WL 970883, at *6 (D.D.C. Mar. 30, 2022) (FYP) (addressing the effect of the global pandemic and stating "[d]elays between three to five years *under normal circumstances* are often not unreasonable.") (emphasis in original).  Plaintiffs' conclusory assertions, without more, are insufficient to show that the State Department is not following a rule of reason by employing a first-in, first-out methodology.  *See Da Costa*, 80 F.4th at 341 ("Those conclusory allegations are insufficient to show that USCIS is not following its publicly stated policy.").

Overall, the time period for which Plaintiffs' applications have been in administrative processing is within the bounds of that which other courts have found reasonable. Therefore, the Court finds that the first and second *TRAC* factors do not lend credence to Plaintiffs' claims. As *TRAC* factor one is considered the "most important" factor, this finding weighs heavily in the Court's ultimate holding.

### B. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiffs' interests, health, and welfare. *Ghadami*, 2020 WL 1308376, at *9.

Plaintiffs allege that they have "spent eight years trying to finish their immigrant journey," and that the delay at issue in this case "will cause [Plaintiff] Mottahedan to keep her investment at risk until she is eligible to remove the conditions on her permanent residency." Compl. ¶¶ 62–63. Plaintiffs further state that the delay in processing their visa applications have "caused Plaintiffs tangible harm from the increased cost, access to capital, and risk to their capital," and this "financial harm is compounded" by the "human harms from the delays caused by the cancelled immigrant interviews, lack of transparency from the Embassy on what processing is being undertaken, and anxiety from the uncertainty due to a lack of any communication." *Id.* ¶¶ 64–65.

Although the Court recognizes that Plaintiffs most certainly have an interest in the swift adjudication of their visa applications, "so too do many others facing similar circumstances." *Palakuru*, 521 F. Supp. 3d at 53. Plaintiffs, however, have not pled plausible allegations to their "health and welfare," as present in other cases in which courts have weighed these factors in a plaintiff's favor. *See, e.g.*, *Ghadami*, 2020 WL 1308376, at *9 (applicant was "irrevocably harmed" by separation from his wife and children due to the delay). Rather, Plaintiffs appear to concede that the harm in this case is primarily, if not entirely, economic. Pls.' Resp. at 5 ("The

delay in processing Plaintiffs' visa applications have caused Plaintiffs tangible harm from the increased cost, access to capital, and risk to their capital."); *id.* ("The financial harm is compounded by the human harms from the delays caused by the cancelled immigrant interviews, lack of transparency from the Embassy . . ., and anxiety from the uncertainty due to a lack of any communication.").  While the Court is sympathetic to Plaintiffs' economic harms—as well as any harm Plaintiffs are experiencing from the uncertainty—such allegations, without more, are insufficient to weigh *TRAC* factors three and five in their favor.  *See, e.g.*, *Da Costa*, 80 F.4th at 344–45 ("The financial harms Bega alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five in his favor."); *Desai*, 2021 WL 1110737, at *7 ("purely economic" harm was insufficient to weigh the *TRAC* factors in plaintiff's favor).

As such, factors three and five do not support Plaintiffs' case.  *See, e.g.*, *Da Costa*, 80 F.4th at 344–45.

### C.  *TRAC* Factor Four

Next, *TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.

The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"–even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." *Mashpee Wampanaoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other

waiver applications"). Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76.

In their Complaint, Plaintiffs request that the Court enter an order compelling Defendants to adjudicate their applications "within a timeline that appreciates the existing queue of applicants, if any, but no longer than 90 days from the Court's judgment." Compl. at 17. Plaintiffs therefore argue that they "are not seeking relief that would simply reorder a queue of applications seeking adjudication." Pls.' Resp. at 13 (internal quotations marks and citation omitted). Plaintiffs further state that the Court "does not have before it any evidence indicating whether such a reordering would occur here." *Id.* (citing *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH)). However, the relief Plaintiffs seek—the prompt adjudication of their visa applications—would, as a practical matter, mean that others waiting for adjudication would be likely displaced, as Plaintiffs are still requesting that Defendants adjudicate their applications within a specific time frame. *See* Compl. at 17. This is precisely what factor four counsels against. *See, e.g.*, *Khoshrou v. Blinken*, 2023 WL 4930086, at *7 (D.D.C. Aug. 2, 2023) (CKK); *Palakuru*, 521 F. Supp. 3d at 52 ("Were the Court to compel the Government to act on Palakuru's petition, it would simply move him to the head of queue because he sued."). While Plaintiffs argue that their applications "must be first in line" because they "were first in line for an interview in January 2019," Pls.' Resp. at 13, their argument is simply conclusory and further ignores the fact that a court order directing Defendants to process their applications "would still put [them] ahead in the queue of those *similarly situated*," *Desai*, 2021 WL 1110737, at *7 (emphasis in original).

Courts in this jurisdiction, including this Court, routinely decline to grant relief that would place one prospective visa applicant ahead of others. *See, e.g.*, *Xiaobing Liu v. Blinken*, 544 F.

Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. U.S. Citizenshp. & Immigr. Servs.*, 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020) (RDM); *Dehghanighanatghestani v. Mesquita,* 2022 WL 4379061, at *7 (D.D.C. Sept. 22, 2022) (CKK); *Pushkar v. Blinken*, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK); *Manzoor v. USCIS*, 2022 WL 1316427, at *5–6 (D.D.C. May 3, 2022) (CKK). The Court will now do the same here, finding that the fourth *TRAC* factor weighs against Plaintiffs.

### D. *TRAC* Factor Six

Finally, the sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. The Court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenshp. & Immigr. Servs.*, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021) (RCL).

Here, Plaintiffs have not alleged any bad faith on the part of Defendants. *See generally* Compl. As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Plaintiffs, and therefore does not alter the Court's analysis. *See Palakuru*, 2021 WL 674162, at *6 (considering the sixth TRAC factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] [] processing times").

\*     \*     \*

Altogether, the Court finds that, based on its analysis under the *TRAC* factors, it is "patently obvious" that Plaintiffs cannot prevail on the facts alleged in their Complaint to make out a claim

for unreasonable delay of their visa applications.  Therefore, the Court concludes that Plaintiffs'

Complaint must be dismissed *sua sponte* for failure to state a claim under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court shall *sua sponte* **DISMISS** Plaintiffs' [1] Complaint

for Declaratory and Injunctive Relief.  An appropriate Order accompanies this Memorandum

Opinion.

  /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge